REGAN, Judge.
Plaintiff, Mrs. Josephine Gailhat, widow of Joseph E. Masera,[1] the owner and lessor of the premises designated by the municipal number 501 Bourbon Street located in the City of New Orleans, instituted this suit against the defendants, Casino Royale, Incorporated, the .lessee, and Stanley Lyle,[2] endeavoring to obtain a judgment ordering the defendants to vacate the premises and to deliver possession to the owner thereof.
Defendant, Casino Royale, Incorporated, through its president Stanley Lyle, pleaded the exception of estoppel which was referred to the. merits and then answered, asserting that prior to the expiration of the written lease[3] negotiations were begun by him with plaintiff and her nephew, Milton Abadie, in order to acquire a new lease on the premises and as a result of these conferences he was lulled into a sense of security, which caused him to believe that a lease for an extended term would materialize therefrom; in consequence thereof he expended approximately $1,900 improving the property; therefore plaintiff is now estopped from pursuing these eviction proceedings.
From a judgment in favor of plaintiff ordering defendant to vacate the premises and to surrender possession thereof to the owner as of November 18, 1957, defendant has prosecuted this suspensive appeal.
The record reveals that the defendant originally acquired possession of the property by virtue of a written lease with plaintiff’s husband, Joseph E. Masera, for the sum of $250 per month, which original lease, after the exercise of the option to renew, finally expired on January 31, 1956.
The defendant, before and after the expiration thereof, through Stanley Lyle, its president, endeavored to induce plaintiff to enter into a new lease for an extended period of time.
In this connection the plaintiff testified that she informed Lyle as early as the year of 1951 that she desired possession of her building at the expiration of the existing lease and that she never engaged in any protracted negotiations with the defendant for the purpose of entering into another written lease; she said that she never discussed with Lyle a new lease, a part of *554 the consideration of which would be the association of her nephew, Milton Abadie, in the defendant’s business, and that her nephew was never authorized to negotiate a new lease with the defendant. She stated that after the lease expired, she placed the matter in the hands of her attorney, and thereafter in conformity with her instructions, he informed defendant’s attorney that she was not interested in permitting the defendant to occupy the building by virtue of a written lease over an extended period of time. Subsequently, plaintiff authorized her attorney to permit the defendant to occupy the building on a month to month basis at an increased rental of $350 per month until such time as she was able to make future plans for the use of the building. The defendant accepted the occupancy of the building on these terms.
Milton Abadie, plaintiff’s nephew, admitted that he had innumerable discussions with Lyle about renewing the lease, the nature of which was always revealed to his aunt, that Lyle even offered him money, a partnership, and other things to induce him to procure the lease, but he informed Lyle that the “decision” rested with his aunt. In substance, he corroborated the plaintiff’s testimony.
On the other hand, Lyle testified that during the period in which he was negotiating with plaintiff for a new lease she was endeavoring to induce him to permit her nephew to participate as a partner in the operation of the Casino Royale. He explained that a discussion between him, plaintiff, and Abadie revealed that the acquisition of a lease would be part of the consideration for permitting her nephew to participate in the business. Lyle asserted that in consequence of the foregoing negotiations with plaintiff, he was led to believe that he would obtain a new lease on the premises, and therefore he spent approximately $1,900 improving the property, which he would not have expended had he been sure that he would not obtain a new lease. Lyle, on both direct and cross-examination, conceded that the defendant was occupying the premises on a month to month basis, that no written or verbal lease had been consummated since the negotiations failed, and that he had received the notice to vacate the premises on September 10, 1957.
Plaintiff's attorney testified that he was authorized to permit the defendant to occupy the building on a month to month basis at an increased rental until such time as plaintiff was able to decide upon future plans for the building.
We are of the opinion, predicated upon the foregoing testimony, that the plaintiff possessed the legal right to give the defendant a notice to vacate and to deliver possession of the premises to her. LSA-Civil Code Article 2686 reads:
“ * * * If no time for its [the lease’s] duration has been agreed on, the party desiring to put an end to it must give notice in writing to the other, at least ten days before the expiration of the month, which has begun to run.”
Since no fixed time for the lease’s duration had been agreed upon by these parties, either had the legal right to terminate the lease at the expiration of any month by complying with the provisions of the above quoted article of the Civil Code.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. Masera died October 12, 1950, and plaintiff subsequently was judicially recognized as surviving widow in community and universal legatee and placed in possession as owner of the property.

.The president of Casino Royale, Incorporated, who was subsequently eliminated as an individual defendant herein.

.January 31, 1956.